# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| THE CITY OF CHICAGO, | ) | |
| | ) | No. 20-cv-00372 |
| Appellant, | ) | |
| | ) | Judge Andrea R. Wood |
| v. | ) | |
| | ) | On Appeal from the United States |
| CUPREE HOWARD, | ) | Bankruptcy Court for the Northern |
| | ) | District of Illinois, No. 19 B 22444 |
| Appellee. | ) | |
| | ) | |
| THE CITY OF CHICAGO, | ) | No. 20-cv-01266 |
| | ) | |
| Appellant, | ) | Judge Andrea R. Wood |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | Bankruptcy Court for the Northern |
| MARCELLA M. MANCE, | ) | District of Illinois, No. 19 B 33057 |
| | ) | |
| Appellee. | ) | |

## MEMORANDUM OPINION AND ORDER

Appellees Cupree Howard and Marcella M. Mance each filed separate petitions for Chapter 7 bankruptcy relief. Each Appellee also filed in their respective bankruptcy proceeding a motion to avoid a lien that Appellant City of Chicago ("City") held on their automobile. In both proceedings, the Bankruptcy Courts granted the motions, finding that the liens the City obtained by immobilizing and impounding Appellees' vehicles were avoidable judicial liens under 11 U.S.C. § 522(f)(1)(A). The City now appeals both orders. For the reasons that follow, the Bankruptcy Courts' orders are affirmed.

## BACKGROUND

The facts underlying Appellants' motions to avoid the liens are undisputed and, unless otherwise noted, taken from the respective Bankruptcy Courts' decisions.

Appellee Howard filed a Chapter 7 bankruptcy petition on August 9, 2019. (Suppl. to Bankruptcy Appeal, Ex. at 117, *The City of Chicago v. Howard*, No. 20-cv-00372 (N.D. Ill. Feb. 18, 2020), Dkt. No. 6-2.) His Schedules A/B and C listed an automobile with a value of $575 and claimed an exemption of $575 for that vehicle. In his Schedule E/F, Howard listed a claim held by Appellant City for unpaid parking tickets in the amount of $8,000. Similarly, Appellee Mance filed for Chapter 7 bankruptcy relief on November 20, 2019. (Suppl. to Bankruptcy Appeal, Ex. at 35, *The City of Chicago v. Mance*, No. 20-cv-01266 (N.D. Ill. Mar. 23, 2020), Dkt. No. 7-2.) She listed an automobile worth $3,000 in her Schedule A/B and claimed a $2,400 exemption for that vehicle in her Schedule C. At the time of her petition, Mance owed the City $12,000 for moving and parking violations. The City had impounded both Appellees' vehicles in connection with their unpaid tickets prior to each Appellee's bankruptcy filing and the City remained in possession of the vehicles as of the date of their petitions. (Appellant's Consolidated Br. at 3, *Howard*, 20-cv-00372 (Sept. 7, 2020); *Mance*, 20-cv-01266 (Sept. 7, 2020).)

In their respective bankruptcy proceedings, each Appellee filed a motion to avoid the possessory lien the City claimed over their automobiles. Those liens arose pursuant to a vehicle immobilization program created by § 9-100-120 of the Municipal Code of Chicago ("M.C.C."). Specifically, after following the procedures set out in the ordinance, the City is permitted to immobilize a vehicle whose owner "has accumulated (i) three or more final determinations of liability or (ii) two final determinations which are more than one year past the date of issuance" for certain traffic and parking violations. M.C.C. § 92-100-120(b). Once a vehicle is immobilized by the City, that vehicle is "subject to a possessory lien in favor of the [C]ity in the amount required to obtain release of the vehicle." M.C.C. § 92-100-120(j).

According to Appellees, because the City's ability to impound[1] their vehicles under M.C.C. § 92-100-120 is conditioned on liability determinations made in quasi-judicial administrative proceedings, its liens on Appellees' automobiles are judicial liens that may be avoided under 11 U.S.C. § 522(f)(1)(A). In response, the City argues that because it obtained its liens automatically upon its immobilization of Appellees' vehicles, the liens are statutory liens that cannot be avoided. Both Bankruptcy Courts determined that the City's lien resulting from immobilization was a judicial lien and ruled in favor of the respective Appellee. The City has appealed those determinations.[2] The sole issue on appeal is whether the lien the City obtains from immobilizing a vehicle is a judicial lien or a statutory lien.

## DISCUSSION

Federal district courts have jurisdiction to review bankruptcy court decisions pursuant to 28 U.S.C. § 158(a). When considering a bankruptcy appeal, a district court reviews the bankruptcy court's findings of fact for clear error while its conclusions of law are reviewed *de novo*. *Stamat v. Neary*, 635 F.3d 974, 979 (7th Cir. 2011); *In re Brittwood Creek, LLC*, 450 B.R. 769, 773 (N.D. Ill. 2011).

The Bankruptcy Code allows a debtor to avoid a lien that impairs a debtor's exemption when the lien is a "judicial lien." 11 U.S.C. § 522(f)(1)(A). A "judicial lien" is defined by the Bankruptcy Code as a "lien obtained by judgment, levy, sequestration, or other legal or equitable

---

[1] The City's vehicle immobilization "provide[s] for immobilizing any eligible vehicle located on the public way or any city-owned property by placement of a restraint in such a manner as to prevent its operation" but also encompasses "an immediate tow" in certain circumstances. M.C.C. § 92-100-120(a). Further, an immobilized vehicle may subsequently be towed and impounded if the immobilizing device "has not been released within 24 hours of its placement." *Id.* § 92-100-120(c). Thus, even though the City's liens on Appellees' vehicles arose pursuant to a vehicle immobilization program, the City eventually towed and impounded both vehicles.

[2] The *Mance* appeal was initially assigned to a different court but was reassigned to this Court as a related case to the *Howard* appeal.

3

process or proceeding." *Id.* § 101(36). By contrast, a "statutory lien" is defined as a "lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien." *Id.* § 101(53). As these definitions make clear, "[j]udicial liens and statutory liens are mutually exclusive." *In re Wigfall*, 606 B.R. 784, 787 (N.D. Ill. 2019). To determine the nature of a particular lien, the key question is "whether it arises solely by force of statute, or whether it results from some type of judicial process or proceeding." *In re Schick*, 418 F.3d 321, 324 (3d Cir. 2005).

To begin, the Court first considers the statutory scheme by which Appellees' automobiles were impounded. Illinois law gives municipalities and counties the right to "provide by ordinance for a system of administrative adjudication of vehicular standing and parking violations and vehicle compliance violations[,] automated traffic law violations[,] and automated speed enforcement system violations." 625 ILCS 5/11-208.3(a). The City ordinances at issue here were established pursuant to that authority. *See In re Peake*, 588 B.R. 811, 817–21 (N.D. Ill. 2018), *aff'd sub nom. In re Fulton*, 926 F.3d 916 (7th Cir. 2019). Under M.C.C. § 9-100-020(a):

> The violation of any provision of the traffic code prohibiting or restricting vehicular standing or parking, or establishing a compliance, automated speed enforcement system, or automated traffic law enforcement system violation, shall be a civil offense punishable by fine, and no criminal penalty, or civil sanction other than that prescribed in the traffic code shall be imposed.

Once a vehicle's owner is given notice of a violation, "a vehicle owner is granted the opportunity to contest the violation either in person at a hearing or by way of mail correspondence." *Peake*, 588 B.R. at 818 (citing M.C.C. §§ 9-100-055, 070, 080). "If the vehicle owner loses or otherwise does not contest the violation, a determination of liability is entered." *Id.* (citing M.C.C. § 9-100-090). A losing vehicle owner is entitled to appeal their liability determination under Illinois's Administrative Review Law, 735 ILCS 5/3-101 *et seq. Peake*, 588 B.R. at 818. "If administrative

4

review of the decision is not sought or is not fruitful for the vehicle owner, the determination of liability becomes final." *Id.* (citing M.C.C. § 9-100-100). At the point a liability determination becomes final, it "constitute[s] a debt due and owing to the [C]ity." M.C.C. § 9-100-100(b).

As the language of the Illinois statute and the City's ordinance makes clear, these final determinations of liability for certain vehicular, parking, and traffic violations are the product of an "administrative adjudication" system. 625 ILCS 5/11-208.3(a); M.C.C. § 9-100-101(a). The Seventh Circuit has held that these final determinations of liability are "money judgments." *Fulton*, 926 F.3d at 931.[3] And where a vehicle owner has the requisite number of unpaid final determinations of liability under M.C.C. § 9-100-120(b), the City may resort to the immobilization procedures available under that Section. M.C.C. § 9-100-100(b). But accumulating multiple unpaid final determinations of liability does not automatically allow the City to immobilize a vehicle. Rather, that occurrence sets in motion a separate administrative process whereby the City first sends the vehicle's owner a "notice of impending vehicle immobilization." M.C.C. § 9-100-120(b). Upon receipt of the notice, the owner has the option to pay the amounts owed within 21 days or challenge the notice by requesting a hearing in which the owner can present evidence that would disprove liability. *Id.* "Only after this process is completed can the vehicle be immobilized." *Wigfall*, 606 B.R. at 789. And once the vehicle is immobilized, the City holds a possessory lien on that vehicle. M.C.C. § 9-100-120(j).

Despite its own acknowledgment that the final determinations of liability preceding the lien created by immobilization result from administrative adjudications, the City nonetheless

---

[3] *Fulton*'s holding that the final determinations of liability were money judgments arose in the context of the Seventh Circuit's analysis of whether those determinations were excepted under 11 U.S.C. § 362(b)(4) from the Bankruptcy Code's automatic stay provision. *Fulton*, 926 F.3d at 929–31. Nonetheless, this Court sees no reason why *Fulton*'s analysis as to the character of the final determinations of liability would not apply in the present context. Nor does the City dispute that those final determinations of liability are judgments.

5

contends the lien is not "obtained by" the proceedings resulting in the liability determinations. It emphasizes that the definition of judicial lien in 11 U.S.C. § 101(36) requires that the lien be "obtained by" the judgment. According to the City, the phrase "obtained by" requires that the judgment itself either is a lien or becomes a lien. By contrast, here, the City argues that once each individual final determination of liability underlying the immobilization of Appellees' vehicles was made, the administrative proceeding was over. Only later, when each Appellee accumulated the requisite number of unpaid final determinations of liability, was the City entitled without further adjudicative proceedings to immobilize their vehicles and obtain its liens. Thus, the City asserts that there is a disconnect between the administrative adjudications resulting in the final determinations of liability and the immobilization of Appellees' vehicles, such that the two processes are separate. When the immobilization procedure is properly viewed separately, the City argues, it is clear that the lien arises automatically upon the fulfillment of certain conditions—accumulation of multiple unpaid final determinations of liability and the act of immobilization—and therefore the resulting lien is a statutory lien.

The City's argument ignores the separate administrative process to which it must adhere before immobilizing a vehicle—namely, the issuance of a notice of impending immobilization and the vehicle owner's right to challenge the notice in a hearing. *See Schick*, 418 F.3d at 328 ("[F]or a lien to be judicial, there must be some judicial or administrative process or proceeding that ultimately results in the obtaining of the lien."); *In re Beck*, No. 15-29541-svk, 2016 WL 489892, at * (E.D. Wis. Feb. 5, 2016) ("[T]he existence of [administrative] procedures in the statutory scheme supports the conclusion that [the] lien against the Debtor is a judicial lien, not a statutory lien."). Regardless, the Court concludes that the City's interpretation of the "obtained by" language as requiring a direct link between the final determinations of liability and the lien is

6

entirely too narrow. It is not necessary that the instrument embodying a final determination of liability expressly create a lien; it is enough that the City's ability to immobilize a vehicle and thus obtain a lien is dependent on prior judicial action. Put differently, because the lien is based on the combined effect of a certain number of judgments, it is obtained by those judgments.[4] *See id.* at 323 ("[A] statutory lien is only one that arises automatically and ***is not based*** on . . . judicial action." (emphasis added) (quoting H.R. Rep. No. 95-595 (1977))); *see also In re Cunningham*, 478 B.R. 346, 350 (N.D. Ind. 2012) ("[T]he nature of a lien as either a 'judicial lien' or a 'statutory lien' is determined by means of the manner in which the lien arises originally . . . .").

Moreover, the City's narrow interpretation of the supposed plain language meaning of "obtained by" is undermined by the Supreme Court's interpretation of the phrase in a different context. In interpreting a provision in the Bankruptcy Code prohibiting the discharge of debts "to the extent obtained by . . . false pretenses, a false representation, or actual fraud," 11 U.S.C. § 523(a)(2)(A), the Supreme Court recognized that there is an "element of causation inherent in the phrase 'obtained by.'" *Field v. Mans*, 516 U.S. 59, 66 (1995). Subsequently, the Supreme Court stated that in cases of actual fraud, the phrase encompassed "any debts 'traceable' to [a] fraudulent conveyance." *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1589 (2016); *see also id.* at 1591 (Thomas, J., dissenting) ("[T]he plain meaning of the phrase 'obtained by' . . . has an 'inherent' 'element of causation,' and refers to those debts 'resulting from' or traceable to' fraud." (quoting *Field*, 516 U.S. at 59, 61, 64, 66)). And here, the City's ability to immobilize a vehicle is

---

[4] The Court recognizes that, in certain circumstances, not all liens created by or based on judgments are necessarily judicial liens. For example, the Third Circuit found that a lien created by a mere ministerial act that had the force and effect of a civil judgment was nonetheless a statutory lien when the underlying debt was not sufficiently connected to any form of judicial process or proceeding. *See Schick*, 418 F.3d at 325–26 (finding a statutory lien where the lien was established by superior court clerk docketing a certificate of debt on the record of judgments because "the mere act of docketing a debt by the [c]lerk . . . as part of his ministerial duties is insufficient to" create a judicial lien). Those circumstances are not present here, however, where there was a full quasi-judicial administrative proceeding underlying the judgments upon which the City's liens are based.

7

certainly traceable to the final determinations of liability. While the City attempts to distinguish *Husky* by stating that it involved a different statute and different facts and circumstances than those here, that does nothing to detract from the Supreme Court's recognition that the phrase "obtained by" is more expansive than the City's interpretation.

This Court's conclusion that the liens at issue are judicial liens because of their basis in prior judicial action is reinforced by the definition of statutory lien. Specifically, a statutory lien is defined as "arising *solely* by force of a statute on specified circumstances or conditions" and does not include a judicial lien even if the lien "is provided by or is dependent on a statute" or "made fully effective by statute." 11 U.S.C. § 101(53) (emphasis added). For example, a mechanic's lien, identified by Congress as a "prime example of a statutory lien," is a lien that "attaches by statute to improved property from the date that payment for labor and materials to make the improvement is due. No judicial administrative, or other process must be followed before the claimant obtains the lien." *In re Wigfall*, 606 B.R. at 787 (citing H.R. Rep. No. 95-595 (1977) and 770 ILCS 60/1). But the liens here do not arise solely by force of a statute; they arise by force of the underlying final liability determinations resulting from administrative adjudications. And the amount of the lien is "determined by the judgment on each ticket." *Wigfall*, 606 B.R. at 790. There is simply no way to disaggregate the final determinations of liability from the lien resulting from immobilization. The lien is a method to enforce the unpaid judgments, and it is therefore a judicial lien.

In sum, this Court finds that the liens the City obtained from immobilizing Appellees' vehicles were based on Appellees' prior final determinations of liabilities, which the Seventh Circuit has recognized as money judgments. Without the requisite number of judgments, the City would have no right to immobilize the vehicles and no liens could arise. For that reason, this

Court agrees with the Bankruptcy Courts that the City's liens on Appellees' vehicles were judicial liens that could be avoided under 11 U.S.C. § 522(f)(1)(A).

## CONCLUSION

For the foregoing reasons, the Bankruptcy Courts' orders granting Appellees' motions to avoid lien are affirmed.

ENTERED:

Dated: January 29, 2021

Andrea R. Wood
United States District Judge

9